UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| GARTNER TEXAS PROPERTIES, LLC, <br><br> Plaintiff, <br><br> v. <br><br> JPS CONSTRUCTION AND DESIGN INC. and RICHIE'S INSULATION, INC., <br><br> Defendants, <br><br> JPS CONSTRUCTION AND DESIGN INC., <br><br> Third-Party Plaintiff, <br><br> v. <br><br> ICYNENE CORPORATION, <br><br> Third-Party Defendant | C.A. No. 1:20-CV-0095-MSM-PAS |

MEMORANDUM AND ORDER

Mary S. McElroy, United States District Judge.

Before the Court are three motions to dismiss. Two were filed by the defendants, JPS Construction and Design, Inc. ("JPS") and Richie's Insulation, Inc. ("Richie's"), seeking to dismiss the plaintiff's Complaint. (ECF Nos. 13 & 22.) The third-party defendant, Icynene Corporation ("Icynene"), filed the third motion, seeking to dismiss JPS's Third-Party Complaint. (ECF No. 30.)

JPS and Richie's motions require the Court to consider (1) whether the

1

economic loss doctrine precludes the plaintiff's claim of negligence against those parties and (2) whether the plaintiff properly has set forth a claim of breach of express warranty against Richie's.  Icynene's motion requires a determination of whether JPS's Third-Party Complaint plausibly sets forth a claim of contribution, making impleader under Fed. R. Civ. P. 14(a) proper.

For the following reasons, the Court DENIES all motions.

## I. BACKROUND

This matter involves the defendant's alleged negligence and breach of warranty for construction work performed at a residential property at 21 Kane Avenue, Middletown, Rhode Island ("the Property").  JPS, a general contractor, was the builder of the Property who subcontracted with Richie's to install insulation.  (ECF No. 1 ¶¶ 6-7.)  Richie's provided JPS with an estimate for the insulation work, which included the following language: "THE MATERIALS ARE GUARANTEED FROM THE MANUFACTURER.  ALL WORKMANSHIP IS FULLY GUARANTEED FOR ONE YEAR."  (ECF No. 27-2 at 4.)[1]  The insulation was manufactured by third-party defendant, Icynene.  (ECF No. 16 ¶ 10.)

---

[1] The estimate containing the warranty was not attached to the original pleadings; it was among documents provided by the parties for purposes of the pending motions. Other such documents include deeds for the Property; the assignment of claims to the plaintiff; and the State of Texas Certificate of Formation for Gartner Texas Properties, LLC.  While the Court normally may not consider documents outside the pleadings on a motion to dismiss, public records or documents sufficiently referred to in the Complaint are among the exceptions to that rule. *See Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993).  The documents provided here fall into those categories.

An individual, Robert M. Gartner, purchased the property and, upon moving in, he noticed "a strong fishy odor." (ECF No. 1 ¶¶ 8-9.) It turned out that this odor was emanating from the insulation that Richie's had installed. *Id.* ¶ 11.

Mr. Gartner hired another contractor, Michael Salas, to investigate and alleviate the issue. *Id.* ¶ 12. After several weeks of unsuccessful conservative remedial measures, Mr. Salas cut into the house walls to remove samples of the insulation. *Id.* ¶¶ 12-14. These samples were sent to the manufacturer for testing and they were determined to be of substandard quality. *Id.* ¶¶ 15-16. Mr. Salas' further investigation revealed that Richie's had improperly installed the insulation throughout the home. *Id.* ¶ 17. Eliminating this defective insulation required the removal of "fixtures, wallboard and other materials, essentially stripping the house to its framing." *Id.* ¶ 18. The cost of this remediation is in excess of $580,000. *Id.* ¶ 19.

In addition to the insulation issues, Mr. Salas discovered other problems with the construction. Specifically, that JPS had incorrectly installed three exterior doors, failed to adequately fireproof a fireplace, failed to properly block a load bearing wall, and improperly installed a roof vent. *Id.* ¶ 20.

On March 6, 2019, Mr. Gartner conveyed the Property to Gartner Texas Properties, LLC ("Gartner Texas" or plaintiff), a Texas limited liability company, of which Mr. Gartner is a manager. (ECF No. 13-2 at 10, 13.) He also assigned to Gartner Texas all of his rights and interests in claims, demands and/or causes of action against Richie's and JPS. (ECF No. 1 ¶ 21; ECF No. 27-2 at 8.)

Gartner Texas filed suit in this Court on the grounds of diversity jurisdiction, alleging (1) negligence against both Richie's and JPS and (2) breach of express warranty against Richie's. JPS has filed a third-party complaint against Icynene Corporation, seeking contribution.

Because this case invokes diversity jurisdiction, the Court applies the substantive law of the state of Rhode Island. *See Artuso v. Vertex Pharm., Inc.*, 637 F.3d 1, 5 (1st Cir. 2011).

## II. MOTION TO DISMISS STANDARD

To survive a motion to dismiss, the complaint must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court assesses the sufficiency of the plaintiff's factual allegations in a two-step process. *See Ocasio-Herandez v. Fortuno-Burset*, 640 F.3d 1, 7, 11-13 (1st Cir. 2011). "Step one: isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." *Schatz v. Republican State Leadership Comm.*, 699 F.3d 50, 55 (1st Cir. 2012). "Step two: take the complaint's well-pled (*i.e.,* non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief." *Id.* "The relevant question ... in assessing plausibility is not whether the complaint makes any particular factual allegations but, rather, whether 'the complaint warrant[s] dismissal because it failed *in toto* to render plaintiffs' entitlement to relief plausible." *Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 55 (1st Cir. 2013) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569 n.14 (2007)).

## III. DISCUSSION

### A. JPS and Richie's Motions to Dismiss

#### 1. The Plaintiff's Negligence Claim Against JPS and Richie's.

JPS and Richie's argue that the plaintiff's negligence claim fails as a matter of law under the economic loss doctrine. The doctrine provides that "a plaintiff is precluded purely economic losses in a negligence cause of action." *Franklin Grove Corp. v. Drexel*, 936 A.2d 1272, 1275 (R.I. 2007). The rationale "for abiding by the economic loss doctrine centers on the notion that commercial transactions are more appropriately suited to resolution through the law of contract, than through the law of tort." *Id.*

Under Rhode Island law, the economic loss doctrine does not apply to consumer transactions. *Rousseau v. K.N. Construction, Inc.*, 727 A.2d 190, 193 (R.I. 1999). The defendants argue that because the plaintiff, Gartner Texas, is a limited liability company, and not a "consumer," the consumer exception does not apply, and the economic loss doctrine bars the negligence claim. The defendants cite to various provisions of the Rhode Island General Laws to support their argument that Rhode Island law defines a "consumer" as an individual person and not a business entity.[2]

But Mr. Gartner, the predecessor in interest to the plaintiff, an individual

---

[2] *See, e.g.*, R.I.G.L. § 6-13-21 ("Consumer" means an individual who enters into a transaction primarily for personal, family, or household purposes.); R.I.G.L. § 23-90-3 ("Consumer" means an individual who is also a resident of this state.); R.I.G.L. § 6A-1-201 ("Consumer" means an individual who enters into a transaction primarily for personal, family, or household purposes.); R.I.G.L. § 6-51-2(d) ("Consumer" means any natural person.).

5

person who purchased the Property, was a consumer. The consumer exception to the economic loss doctrine would therefore apply to Mr. Gartner's claims of negligence. *See Franklin Grove Corp. v. Drexel*, 936 A.2d 1272, 1276 (R.I. 2007). Because Mr. Gartner assigned all claims to the plaintiff, the plaintiff has set forth a plausible claim of negligence against the defendants.

### 2. The Plaintiff's Breach of Express Warranty Claim Against Richie's

Richie's argues that the plaintiff's breach of express warranty claim fails because there is no privity of contract between the parties. However, the plaintiff sets forth a facially plausible case that, as assignee of Mr. Gartner's claims, it may be an intended third-party beneficiary of this warranty and therefore able to bring this contractual claim.

The plaintiff has produced an estimate from Richie's, addressed to the general contractor JPS, which provides that "ALL WORKMANSHIP IS FULLY GUARANTEED FOR ONE YEAR." (ECF No. 27-2.) The Rhode Island Supreme Court has held that "where a subcontractor provides more than mere materials, the [property] owner's status will change from incidental to intended beneficiary of the subcontract, if 'the circumstances indicate that [the subcontractor] intends to give [the property owner] the benefit of the promised performance.'" *Hexagon Holdings, Inc. v. Carlisle Syntec Inc.*, 199 A.3d 1034, 1040 (R.I. 2019) (quoting Restatement (Second) Contracts § 302(1)(b)). Because the subcontract here included the installation of insulation at the Property, a plausible case exists that the plaintiff property owner was an intended third-party beneficiary.

6

Richie's also argues that the plaintiff's Complaint does not properly set forth a claim for breach of express warranty because it does not allege reliance on the warranty, as required by the Rhode Island enactment of the Uniform Commercial Code ("UCC"), R.I.G.L. § 6A-2-313(a). It is unclear on this limited record, however, whether the UCC, which applies to the sale of goods, should apply here. Richie's did provide the insulation, which likely can be characterized as a good, but it also performed the service of installation. Generally, the UCC does not apply to such mixed contracts if the "predominant factor" of the contract is the rendition of services as opposed to the sale of goods. *See Cambridge Plating Co., Inc. v. Napco, Inc.*, 991 F.2d 21, 24 (1st Cir. 1993). The language of the warranty—which covered "all workmanship"—may well mean this contract is to be considered a mixed contract primarily consisting of the rendering of service and thereby not covered by the UCC. But, because the record at this early stage is unclear, an equally plausible argument could be made that the predominant factor is the sale of the insulation.

In all, the plaintiff has, at this pleadings stage, identified the warranty and pled sufficient facts that, as Mr. Gartner's assignee, it may be an intended third-party beneficiary of that warranty.

### B. Icynene's Motion to Dismiss

Icynene moves to dismiss JPS's Third-Party Complaint under Rules 14(a) and Rule 12(b)(6). The issue is whether JPS sates a plausible claim for contribution against Icynene upon which relief can be granted and, if so, whether that claim is properly brought under Rule 14(a).

Pursuant to Rule 14(a), a defending party, such as JPS here, may bring a third-party complaint against a "nonparty who is or may be liable to it for all or part of the claim against it." It is not enough to implead a third-party plaintiff simply because that party may be liable to the original plaintiff—there must be "a liability nexus between the third party plaintiff and the proposed third party defendant." *Marcus v. Marcoux*, 41 F.R.D. 332, 334 (D.R.I. 1967). That is, Icynene can be impleaded if it may be "secondarily liable" to JPS "for all or part of the plaintiff's recovery." *Id.* In this case, a liability nexus would exist if JPS could claim contribution from Icynene for the damages JPS allegedly caused the plaintiff.

Icynene argues that as the insulation manufacturer, it had no involvement in the work performed solely by JPS (as opposed to work by Richie's) because none of that work involved insulation. According to the plaintiff's Complaint, JPS's allegedly negligent work consisted of incorrectly installing exterior doors; improperly fireproofing of a fireplace; failing to properly block a load bearing wall; and improperly installing a roof vent. Thus, Icynene argues that JPS's claim for contribution must fail because Icynene could have no liability to JPS for any of the plaintiff's recovery for these alleged issues. It would then follow that impleader under Rule 14(a) is improper.

While that may well be true with respect to the work done solely by JPS, the pleadings include sufficient facts that make plausible that Icynene is a joint tortfeasor with Richie's, who installed Icynene's product. The Rhode Island Uniform Contribution Among Joint Tortfeasors Act ("UCAJTA"), R.I.G.L. § 10-6-2, provides

8

that for purposes of contribution, "'joint tortfeasors' means two (2) or more persons jointly or severally liable in tort for the same injury to person or property…." The facts the plaintiff has alleged here indicate that either substandard insulation, Richie's improper installation, or some combination thereof caused the plaintiff's damages.

Icynene's possible status as a joint tortfeasor with Richie's for the insulation issues could be imputed to JPS because Richie's was JPS's subcontractor. The UCAJTA provides that, for purposes of contribution, "a principal and agent shall be considered a single tortfeasor." R.I.G.L. § 10-6-2. The facts alleged therefore indicate that JPS and Richie's are a single tortfeasor. Icynene could then be a joint tortfeasor with that single-tortfeasor unit, rather than simply with Richie's, and a right of contribution against Icynene would follow.

Accordingly, JPS has set forth a plausible claim of contribution against Icynene and impleader against that party under Rule 14(a) is appropriate.

## IV. CONCLUSION

For the foregoing reasons, the Motions to Dismiss of Richie's (ECF No. 13), JPS (ECF No. 22), and Icynene (ECF No. 30) are DENIED.

IT IS SO ORDERED.

_____
Mary S. McElroy
United States District Judge
January 27, 2021